UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TENARIS, S.A., et al.,

*Petitioners*,

v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

*Respondent*.

Civil Action No. 1:18-cv-01373 (CJN)

<u>**MEMORANDUM OPINION**</u>

Petitioners, a Luxembourg steel company and its Portuguese subsidiary, seek to confirm

and enforce an arbitration award issued against the Bolivarian Republic of Venezuela.  *See*

*generally* Pet., ECF No. 1.  After Petitioners effected service, Venezuela failed to enter an

appearance, and Petitioners moved for default judgment.  *See* Pets.' Mot. for Default Judgment

("Pets.' Mot."), ECF No. 16.  Shortly after Petitioners filed their motion, Venezuela entered an

appearance and filed an opposition to the motion.  *See* Resp.' Opp'n to Mot. for Default

Judgment ("Resp.' Opp'n"), ECF No. 25.  The Court will therefore deny Petitioners' motion for

default judgment but will grant in part and deny in part the petition to recognize and enforce the

award.

**I.      Background**

Petitioner Tenaris S.A., a Luxembourg company, is a global supplier of steel tubes for

commercial application in the energy sector.  *See Tenaris S.A. v. Bolivian Republic of Venezuela*,

ICSID Case No. ARB/12/23, Award, ECF No. 1-3, ¶¶ 52–54.  Petitioner Talta-Trading E

Marketing Sociedade Unipessoal LDA is Tenaris's wholly-owned subsidiary incorporated in

Portugal.  *See id.* ¶ 239.  Tenaris and Talta held interests in Tubos de Acero de Venezuela S.A.

("TAVSA"), a Venezuelan company producing steel pipes, and Complejo Sidenirgico de

Guayana, C.A. ("Comsigua"), a Venezuelan company producing hot briquetted iron, a basic

input for the production of steel.  *See id.* ¶ 52.  In 2009 and 2011, Venezuela expropriated

Petitioners' interest in TAVSA and Comsigua without compensation.  *See id.* ¶¶ 271, 273.

In 2012, Petitioners filed a Request for Arbitration with the International Centre for

Settlement of Investment Disputes ("ICSID") alleging that Venezuela's expropriation violated

the nation's bilateral investment treaties with Luxembourg and Portugal.  *See id.* ¶¶ 6, 47.  The

arbitral tribunal, after determining that it had jurisdiction over the dispute, ruled for Tenaris and

Talta, awarding Petitioners $137,017,887 USD as compensation for Venezuela's unlawful

expropriation.  *See id.* ¶ 892.  The tribunal also awarded pre-award and post-award interest to

accrue "from April 30, 2008, up to the date of actual payment at a rate equal to the LIBOR for

one-year USD deposits plus 4% p.a., with the interest rate redefined every year from April 30,

2008, onwards and interest compounded on a year-in-arrears basis." *Id.*  The award is silent as to

post-judgment interest.

Following the tribunal's decision, Venezuela filed an application with ICSID to annul the

award.  *See* Nigel Blackaby Decl. ¶ 8, ECF No. 1-2.  An ICSID ad hoc annulment committee

rejected the application, ending the ICSID proceedings and making the arbitral award final.  *See*

*id.*

In 2018, Petitioners sued seeking recognition of the award under 22 U.S.C. § 1650a and

Article 54 of the ICSID Convention.  *See generally* Pet., ECF No. 1.  On July 26, 2019,

Petitioners served Venezuela through diplomatic channels under 28 U.S.C § 1608(a)(4).  *See*

Return of Service, ECF No. 12.  Under Section 1608(d) of the Foreign Sovereign Immunities Act

("FSIA"), 28 U.S.C. § 1608(d), Venezuela had until September 24, 2019, to serve its answer or other responsive pleadings.  When Venezuela failed to meet this deadline, Petitioners asked the Clerk of the Court to issue an entry of default, which she did.  Petitioners then moved for default judgment.  *See* Pets.' Mot., ECF No. 16.

Fearing that Venezuela's nonappearance was due to a lack of notice (including to the appropriate government), the Court sent a letter to Special Attorney General of Venezuela José Ignacio Hernández informing him of the current litigation and Petitioners' motion for default judgment.  *See* Letter from Judge Carl J. Nichols, ECF No. 20.  Mr. Hernández promptly responded to the letter informing the Court that Venezuela would be retaining counsel in the matter.  *See* Letter from José Ignacio Hernández, ECF No. 21.  Soon after, counsel for Venezuela entered an appearance and filed an opposition to Petitioner's motion for default judgment.  *See* Resp.'s Opp'n, ECF No. 25.  The Court finds that Venezuela's appearance makes default judgment inappropriate.

In its opposition, Venezuela agreed with Petitioners that this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1330(a) and the Foreign Sovereign Immunities Act's arbitration exception, 28 U.S.C. § 1605(a)(6).  *See* Resp. Opp'n, ECF No. 25, at 1.  Venezuela also agreed that the Court should affirm the arbitral award.  *Id.*  There are, however, three areas of disagreement between the Parties that the Court will address in turn.

## II.     Analysis

First, the Parties disagree about the calculation of post-judgment interest.  Post-judgment interest is, of course, different from post-award interest, which the tribunal did address.  Post-judgment interest refers to the interest that accrues following this Court's judgment enforcing the award, while post-award interest refers to the interest that accrues between the arbitration panel's

3

decision and a decision enforcing the award.  *See Tenaris S.A. v. Republic of Venezuela*, No. CV

18-1371, 2020 WL 3265476, at *2 (D.D.C. June 17, 2020).

As a matter of common law, "[w]hen the plaintiff recovers a valid and final personal

judgment, his original claim is extinguished and rights upon the judgment are substituted for it.

The plaintiff's original claim is said to be 'merged' in the judgment."  *OI Eur. Grp. B.V. v.*

*Bolivarian Republic of Venezuela*, No. CV 16-1533, 2019 WL 2185040, at *6 (D.D.C. May 21,

2019) (quoting Restatement (Second) of Judgments § 18 cmt.a (1982)).  Consistent with this

notion, courts have held that when a "federal court confirms an arbitral award, the award merges

into the judgment and the federal rate for post-judgment interest presumptively applies."  *Bayer*

*Crop Sci. AG v. Dow Agrosciences L.L.C.*, 680 F. App'x 985, 1000 (Fed. Cir. 2017) (collecting

cases).

Congress, has provided a post-judgment interest rate that applies to civil money

judgments recovered in district court.  Pursuant to 28 U.S.C. § 1961(a), "interest shall be

calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year

constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding the date of judgment."  Venezuela asserts that the rate

set forth in § 1961(a) should govern the post-judgment interest in this case.  Petitioners, on the

other hand, argue that post-judgment interest should accrue at the post-award interest rate set

forth in the ICSID decision.

Despite Petitioners arguments to the contrary, Section 1961(a) does "not permit" this

Court to "exercise . . . judicial discretion" in setting post-judgment interest rates.  *OI European*

*Grp. B.V.*, 2019 WL 2185040, at *6 (cleaned up).  The rate prescribed by statute is "mandatory."

*Id.*  A different post-judgment interest rate can only be applied in two instances:  (1) when the

parties agree to a different rate by "clear, unambiguous, and unequivocal language," *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004); or (2) when the arbitral award itself "explicitly state[s] the interest rate to be applied 'post-judgment,'" *OI European Grp. B.V.*, 2019 WL 2185040, at *6.

Petitioners have not demonstrated that either of these exceptions applies here. The arbitral award is silent on a post-judgment interest rate. And Petitioners have identified no agreement between the parties to apply a post-judgment interest rate different from the one set forth in § 1961(a). The Court therefore holds that Section 1961(a)'s interest rate will apply to the accumulation of interest from the date of this decision.

The second dispute stems from Petitioners' request for attorneys' fees. Parties to litigation proceedings in the United States are generally responsible for their own litigation costs. *See Summit Valley Indus. v. United Blvd. of Carpenters & Joiners*, 456 U.S. 717, 725 (1982). But federal courts retain the inherent power to assess attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). In the context of petitions to enforce arbitration awards, courts in this district have awarded petitioners reasonable attorneys' fees and costs when arbitral award debtors "unjustifiably refuse to abide by the arbitral award." *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 3 (D.D.C. 2013). In *Concesionaria*, for example, the Court awarded a petitioner's attorneys' fees and costs when the respondent failed to satisfy the arbitral award for more than a year and did not file an appearance in the case filed by petitioner to have the award recognized and enforced. *Id.*

Petitioners argue that, like the respondent in *Concesionaria*, Venezuela unjustifiably refused to abide by the arbitration award because it has failed to satisfy the award for more than

three years.  *See* Pets.' Reply, ECF No. 26, at 2.  Although Venezuela certainly did not promptly

satisfy the arbitral award (and has not yet done so), the Court disagrees that attorney's fees are

warranted.  Unlike the respondent in *Concesionaria*, Venezuela, after the Court notified the

country's U.S.-recognized representatives of the lawsuit, promptly entered an appearance and

acknowledged that the arbitral award was proper.  *See* Resp. Opp'n, ECF No. 25, at 1.  In these

circumstances, the Court declines to award Petitioners their attorneys' fees and costs.

Finally, Venezuela requests that, following the entry of judgment on the arbitration

award, the Court enter a stay of enforcement of that judgment given the Venezuelan sanction

regulations issued by the U.S. Department's Office of Foreign Assets Control ("OFAC").  *See*

Resp.'s Opp'n, ECF No. 25, at 7–9.  The Venezuelan sanctions program was promulgated under

the International Emergency Economic Powers Act ("IEEPA"), which authorizes the President,

upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any

acquisition . . . use, transfer . . . or dealing in, or exercising any right, power, or privilege with

respect to, or transactions involving, any property in which any foreign country or a national

thereof has any interest."  50 U.S.C. § 1702(a)(1)(B).  In 2015, President Obama declared a

national emergency related to the ongoing crisis in Venezuela.  Exec. Order No. 13692, 80 Fed.

Reg. 12747 (Mar. 8, 2015) ("E.O. 13692").  Four years later, President Trump took additional

steps to address the emergency by issuing Executive Order 13884 ("E.O. 13884"), which

prohibited the "transfer[]" of all Venezuelan-owned property controlled by U.S. persons or found

in the United States.  Exec. Order No. 13884, 84 Fed. Reg. 38,843 (Aug. 5, 2019), § 1(a).  The

Order also directed the Treasury Secretary to issue regulations and take other actions necessary

to implement the order.  *See* E.O. 13884, § 8; *see also* 50 U.S.C. § 1704.  Adhering to this

directive, OFAC promulgated regulations barring "enforcement of any . . . judgment" against

Venezuela "unless authorized pursuant to a specific license issued by OFAC."  31 C.F.R.

§ 591.407.

Venezuela insists that the OFAC regulation necessitates a stay.  Resp.'s Opp'n, ECF No.

25, at 9.  Not so.  The OFAC regulations make a stay of the enforcement of the award "until

[Petitioners] obtain[ ] a license from OFAC or the relevant sanctions are lifted" redundant:

Petitioners are currently prohibited from attaching or executing on any Venezuelan assets in the

United States without first obtaining a license to do so from OFAC.  A stay prohibiting the

enforcement of an award until an OFAC license is obtained or the current regulations are

amended does nothing to alter the status quo.  Courts consistently deny requests for redundant or

unnecessary stays.  *See, e.g.*, *Ojo v. Luong*, No. 14-4347, 2015 WL 1808514, at *6 (D.N.J. Apr.

21, 2015) (refusing to grant plaintiff's request for an injunction declaring that the FBI must

comply with the Fourth Amendment because such relief would be "redundant and unnecessary");

*J & J Sports Productions., Inc. v. El 33, LLC*, No. EP-11-CV-519-KC, 2013 164521, at *7 (W.D.

Tex. Jan. 14, 2013) (denying plaintiff's request for an injunction preventing defendants from

engaging in illegal activity because "[t]here is no need to order an entirely redundant remedy of

this kind").

Additionally, as other courts in this district have observed, the Court may lack authority

to stay the enforcement of the arbitration award.  *See Tenaris S.A.*, 2020 WL 3265476, at *4.

That is because doing so may violate the ICSID's implementing statute, 22 U.S.C. § 1650(a),

which provides that "[t]he pecuniary obligations imposed by such an award shall be enforced and

shall be given the same full faith and credit as if the award were a final judgment of a court of

general jurisdiction of one of the several States."  The Court therefore denies Venezuela's

request to stay the judgment.

### III.    Conclusion

For these reasons, the Court denies Petitioners' Motion for Default Judgment, ECF No. 16,

and grants in part and denies in part Petitioners' Petition to Recognize and Enforce the Arbitral

Award, ECF No. 1.  An order will issue along with this memorandum opinion.


DATE: February 24, 2021

_____
CARL J. NICHOLS
United States District Judge